J. E. SCOTT, Appellee, v. BARNEY HABINCK, Appellant.

**VENDOR AND PURCHASER:** Measure of Damages—Refusal to Surrender Possession.   A purchaser of realty who resells the property *prior to the time when he is entitled to possession* may not, upon the vendor's refusing to surrender possession, recover of the vendor

rents and profits accruing during the time of such wrongful with-holding, but may recover of the vendor whatever amount he, the purchaser, has been compelled to pay as damages because of his inability to put his new-found vendee in possession.

**ACTIONS: Improper Form Treated as Proper.** A technically improper form of action, with full issues between all interested parties, will be treated as sufficient, when the sole question on appeal is the proper measure of damages.

**LANDLORD AND TENANT: Rents and Profits—Who Entitled to Rents.** Principle affirmed that rents and profits, as such, are recoverable only by him in whom was the right of possession at the time the rents accrued.

**VENDOR AND PURCHASER: Breach in re Possession—Unallowable Counterclaim.** A vendor of land who wrongfully refuses to surrender possession and is sued by the purchaser for *damages*, as distinguished from *rents and profits*, may not counterclaim for the value of improvements placed on the property during the time of the wrongful withholding.

**APPEAL AND ERROR: Rehearing—Scope of Review.** Appellee may not have a rehearing in order to obtain relief which he could only obtain by an appeal which he did not take.

*Appeal from Monona District Court.*—C. C. HAMILTON, Judge.

OCTOBER 25, 1921.

SUPPLEMENTAL OPINION JANUARY 17, 1922.

ACTION to recover damages for the use and occupation of land sold to plaintiff by appellant, who is alleged to have wrongfully refused to yield possession of the property for a period of two years. Plaintiff also demanded recovery on certain items more particularly mentioned in the opinion. By order of court or agreement of parties, the cause appears to have been tried as in equity. There was a judgment for plaintiff for the sum of $5,091.06, and defendant appeals.—*Modified and affirmed.*

*C. E. Underhill* and *Sims & Kuehnle,* for appellant.

*Prichard & Prichard,* for appellee.

WEAVER, J.—The pleadings in the case are voluminous, and we shall not attempt their extended statement. So much of

the claims, defenses, and counterclaims as are material upon this

1. **Vendor and Purchaser:** measure of damages: refusal to surrender possession.

appeal will readily be comprehended from the foregoing preliminary statement and the recitals hereinafter found.

On March 16, 1917, the plaintiff entered into a written contract with the defendant, Barney Habinck, by which Habinck undertook to sell and convey to plaintiff a certain farm of 480 acres in Monona County, Iowa, on terms and conditions which need not here be set out, except to say that defendant thereby agreed to surrender possession on March 1, 1918. Litigation ensued between the parties, in which Habinck sought to avoid and set aside the contract, and pending those proceedings, he remained in possession of the property. The suit resulted in a judgment sustaining the validity of the sale, and Habinck finally gave way, and quit the premises about March 1, 1920; and thereupon plaintiff brought this action to recover the damages which he alleged he had suffered by reason of defendant's wrongful detention of the property, such damages specified in the petition being the rents and profits of the premises at the rate of $4,800 per year. Plaintiff further alleged he had suffered other damages, in that defendant refused to unite with him in procuring or renewing a loan on the land, as he had agreed in the contract, thereby putting the plaintiff to additional expense and increased interest. He also asked to recover the amount of a promissory note of $280 and interest.

The defendant admits the making of the contract, the litigation resulting therefrom, its unfavorable termination, and his retention of the possession for the period of two years after the date prescribed therefor in the contract. He also admits the giving of the promissory note, and that it is unpaid. Among other defenses, the defendant alleged in his answer that, within a few days after the execution of the contract in March, 1917, and while defendant was still in rightful possession of the land, plaintiff resold the property to Peter Lamp, who, in turn, has since sold and transferred the same to O. M. Patrick; and that, by reason thereof, plaintiff's damages recoverable from the defendant on account of the retention of possession by the latter are not to be measured by loss of rents and profits during that time, but by plaintiff's liability, if any, to his grantees, Lamp

and Patrick, to whom he had been unable to deliver possession. It is further alleged that, on February 23, 1920, the plaintiff settled and adjusted the claim and demand of said Lamp and Patrick for damages for the loss of the use and possession of the land during the two years in question, and received full release and discharge thereof from them by payment of the sum of $2,500, which, it is insisted, is the limit of defendant's liability to plaintiff on any theory, but is not recoverable in this action.

Thereafter, and apparently to avoid the defense so pleaded, plaintiff amended his petition, alleging that, after obtaining the contract with defendant, he, plaintiff, resold the land to Lamp, agreeing to deliver possession March 1, 1918; but that, by reason of defendant's refusal to surrender the premises, plaintiff was unable to comply with his contract, and thereby became liable to Lamp or to Lamp and Patrick for damages; and that, to release himself from such obligation, he was compelled to pay said purchasers the sum of $2,500. He further alleges that, in making said settlement, it was orally agreed with Lamp that "plaintiff should have all the right of said Lamp in and to any claim he might have had or did have against the said defendant or any other person by reason of his failure to secure possession of said premises."

The pleadings set up other claims and counterclaims, for the particular statement of which we shall not extend this opinion. They relate to the item of extra interest, already mentioned, and to certain credits or counterclaims asserted by defendant for taxes paid, for money expended for a few minor improvements, for interest paid, and for damages for wrongful attachment. Except as hereinafter noted, we discover nothing in the findings of the trial court in these respects to warrant our interference with its conclusions thereon. The one really debatable question presented by the record is upon the measure of plaintiff's damages because of the defendant's refusal to give up possession, as he had agreed. The appellant does not argue that he is under no legal liability to plaintiff for his failure to perform his contract. He concedes, in effect, that the result of the former litigation leaves him charged with such liability, but his contention here is: First, that a recovery of such damages cannot

be had in this action; and second, that, if a recovery upon that item can be had herein, it is limited to the amount which plaintiff was compelled to pay and did pay to Lamp. We shall, therefore, address ourselves to these issues.

I. The question whether the plaintiff's damages in this respect may be recovered in this action would be difficult to affirm under a more technical or more scientific system of plead-

2. ACTIONS: improper form treated as proper.

ing than such as prevails in this jurisdiction, where liberality of amendment before trial, pending trial, and after trial is the rule, and denial of amendment the exception, which fact makes it possible to keep the pleader of ordinary ingenuity from being turned out of court if his pleadings, in their final form, state a claim or defense of which the court may properly assume jurisdiction. Now, in the instant case, the pleadings, petition, answer, amendments, and substitutes do make it clear that plaintiff has a good cause of action, and that the sole controversy relates to the amount of the recovery. Such being the case, and all the parties in interest being before the court, there appears to be no sufficient reason why the dispute should not be here adjudicated. There should be an end to litigation somewhere. These parties have been clinched in legal combat now nearly four years; they have had their day in both trial and appellate tribunal; and we are not disposed to prolong the quarrel by dismissing the plaintiff out of court, simply to have him re-enter with the same bone of contention at another door. We therefore overrule the objection to the sufficiency of the pleadings, and proceed to consider what is the proper measure of plaintiff's damages.

II. "Damages," as that word is used in discussing liability for violation of contract rights and obligations, is but another word for compensation; and, generally speaking, com-

3. LANDLORD AND TENANT: rents and profits: who entitled to rents.

pensation is an equivalent in money for loss sustained by the complaining party by reason of violation of such right or obligation. Plaintiff's original petition was a simple, ordinary demand for the recovery of rents and profits alleged to have been lost to the plaintiff by the defendant's failure to surrender possession of the land which had been the subject of controversy between

them.  Had the case proceeded to trial upon the claim so pleaded, it is manifest that he could not have been awarded a recovery thereon; for, upon his own showing, he was not entitled to the possession or use of the land at any time during the period specified by him.  Whatever right he might otherwise have acquired to such use and possession, he parted with by his resale to Lamp.  The contract was still valid in his hands, giving him the right to enforce specific performance and compel a conveyance of title which would inure to the benefit of Lamp; but rents and profits, as such, are recoverable only by the person or persons in whom was the right of possession at the time they accrued.  *Hall v. Hall,* 150 Iowa 277.  Though not entitled to rents and profits, plaintiff doubtless could, under proper allegations, recover from defendant for any loss or expense reasonably incurred by him in satisfying the just claims of Lamp on account of his being kept out of possession, pending the former litigation.  Such allegations appear to have been supplied by the amendment to the petition.  It is there averred, and is shown by the evidence without serious dispute, that plaintiff did settle with Lamp and Patrick for their failure to get the possession, and obtained release of their claims for their damages so sustained, at an expense to him of $2,500.  That this entitles plaintiff to a recovery for the amount so expended by him, there is no room for doubt.  Is he entitled to anything more?  We think not.  This is an action to recover damages, an award of a money recovery sufficient to compensate the plaintiff for what he has lost by reason of defendant's retention of the possession of the land for the two years beginning March 1, 1918.  Conceding, as must be done, that defendant's retention of the possession of the land after March 1, 1918, was in violation of his contract, and further conceding that, before said date, and at a time when defendant's possession was still rightful, plaintiff resold the land to Lamp, with right of possession from and after said date, and that Lamp, being kept out of the possession for the period of two years, made claim against plaintiff for the damages so sustained, and that plaintiff settled said claim and was released therefrom in consideration of his payment of $2,500, what has the plaintiff lost by reason of the breach of defendant's contract in this respect?  What amount of money is required to make the

plaintiff whole, with respect to the injury done him by defendant's violation of his agreement? If the answer to this inquiry be not that his loss -or injury is measured by what it reasonably cost him to satisfy the claim of Lamp, on what theory is he to be allowed more?

Plaintiff answers the inquiry by saying that defendant was liable to Lamp (if not to plaintiff) for the full amount of the rents and profits of the land for two years; and that, in the settlement between plaintiff and Lamp, the latter assigned his claim therefor to the plaintiff; and that by said assignment he (plaintiff) acquired a right to recover damages on that basis. It is true that plaintiff, in amendment to his petition, alleged his resale of the land to Lamp; and that, by reason of defendant's violation of his agreement to surrender the premises on March 1, 1918, Lamp was kept out of the possession; and that plaintiff settled Lamp's claim for damages on that account by payment of $2,500; and that, in said settlement, it was orally agreed that the plaintiff "should have" all the right of Lamp in or to any claim he might have or did have against defendant or any other person, by reason of his failure to secure possession of said premises. While this allegation is not without some evidence in its support, the record, as a whole, we regard as insufficient to establish it. The settlement referred to was reduced to writing in the following form:

"Contract of Settlement.

"We, the undersigned, hereby acknowledge full, complete and satisfactory settlement with J. E. Scott by reason of any damages we may have suffered by failure on his part to deliver to us possession of premises purchased by the said J. E. Scott from Barney Habinck and by him sold to Peter Lamp and by Peter Lamp to O. M. Patrick. This, however, is not to be considered as a settlement of any matters of settlement between the said Peter Lamp and O. M. Patrick concerning their transactions in this matter with each other, but is merely a settlement between these said parties and J. E. Scott and his associates. Dated this 23d day of February, 1920, at Onawa, Iowa. [Sgd.] Peter Lamp, O. M. Patrick."

It would seem strange that, if the agreement in fact made contained such a stipulation or condition, or if plaintiff supposed he was to acquire from Lamp any right to recover from defendant anything more than reimbursement for the damages paid Lamp, he would not have been careful to have it expressed in the writing. Not that an oral assignment, if Lamp had then any assignable right or cause of action against defendant, would not have been valid, but that its omission from the writing is a significant circumstance, indicating that the claim now asserted was an afterthought. Lamp himself, answering a leading question by plaintiff's counsel concerning the alleged understanding with plaintiff, answered, "Yes, he should have all the right,— entitled to all that." Patrick, as a witness, does not mention the matter. Plaintiff's counsel, testifying as a witness, says that, in the negotiation for this settlement:

"The question then arose as to whether or not there might be some trouble on the part of Mr. Scott in bringing this action, provided that he settled with these parties. We did not think that it would be a legal objection, but I wanted to save any objection; and it was agreed that part of the consideration for the $2,500 was that Mr. Scott should have all of the rights of Mr. Patrick and Mr. Lamp, and was to have an assignment of all the rights of Mr. Lamp and Mr. Patrick against Habinck, so that, if any question arose, Mr. Scott would have been entitled to maintain this action in his own name. After this was agreed upon, I asked Mr. Underhill to have Mr. Lamp make this assignment. Mr. Lamp had gone out, and Mr. Underhill said that he would get the assignment in writing; and it was the agreement at that time between myself, Mr. Lamp, and Mr. Patrick, and Mr. Jacobson that Mr. Scott was to have all of the rights of action against Mr. Habinck that they would have, or did have."

Mr. Underhill, who represented Mr. Lamp in that transaction, and who was called as a witness for plaintiff, testified:

"Q. Do you remember at that time what the agreement was between Mr. Lamp and myself, acting for Mr. Scott and Mr. Jacobson, as to Mr. Scott's having all of the rights of the defendant Lamp and Patrick against Mr. Habinck in relation to these matters? A. Well, I do not know that part exactly. I

remember some of the things,—I could state—I know it was talked over at the time that Mr. Lamp—I think that Mr. Scott joined in the case against Mr. Habinck for damages, and I think it was also talked that Mr. Lamp asked upon my advice for this settlement, and that they could then recover for all of the damages they were entitled to from Mr. Habinck. That is my understanding of the substance of the talk. Q. Isn't it true that, after this oral agreement was made, I spoke to you about getting an assignment from Mr. Lamp, and that you said you would try and do so, or that you would do so? A. No, I don't remember about that. If you say so, you probably did. I don't remember that.''

It will be seen at once that the substance of the entire showing, giving it its most natural construction, is that the question then in the minds of the parties was whether, if plaintiff settled with Lamp and paid him the damages demanded, he (plaintiff) would thereby acquire a right to reimburse himself by a recovery from defendant; and the suggestion discussed was whether that right would be more effectually guarded by an assignment. The parties to the settlement were both represented by experienced lawyers, who, we must assume, knew that no assignment was necessary, to sustain such right of action, and let the subject pass without that formality. Again, it is a pertinent inquiry what right of action was then vested in Lamp to recover the rents and profits from defendant which he could assign to plaintiff. Lamp's purchase was direct from plaintiff. He had taken from plaintiff no assignment of the contract with the defendant. There was no privity of contract between him and defendant. He looked to plaintiff alone to deliver him the possession, and to plaintiff alone he looked for damages occasioned by its nondelivery. That claim he settled, and gave plaintiff a full and effective discharge, and by his so doing the latter became at once vested with a right of action against defendant for the recovery of compensation, and nothing more.

III. The plaintiff has taken a counter-appeal from so much of the decree below as gives the defendant credit for expense incurred by him in constructing certain sheds and feed boxes on the farm. These items total the sum of $471.60.

4. VENDOR AND PURCHASER: breach *in re* possession: unallowable counterclaim.

Although these expenses were incurred without the knowledge or consent of the plaintiff, yet, if they were made in good faith, a credit therefor in an accounting for rents and profits would not be inequitable. But as we find plaintiff not entitled to recover rents and profits as such, and we confine his recovery to compensation for the damages he has sustained in making good his sale to Lamp, we think his recovery should not be diminished by charging him with these items.

It follows from what we have said that the findings of the trial court should be modified as follows:

1. The item numbered 2, for rental value of the land, is set aside, and in lieu thereof the defendant will be charged with damages for failure to deliver possession, in the amount of $2,500, with interest thereon at 6 per cent from February 23, 1920, the date of the payment of damages by plaintiff to Lamp.

2. The finding numbered 6 will be modified by striking therefrom the items of credit allowed the defendant for constructing a shed, $298, and for cement boxes, $173.60.

The foregoing modifications being made, and all other findings of the trial court in favor of plaintiff being sustained, all as of the date when the judgment was entered below, the record indicates a recovery for plaintiff, as we compute it, in the sum of $2,284.31. The judgment of the district court as thus modified will stand as of the date of its entry, January 21, 1921. Costs of this court will be apportioned, and taxed one half to each party.—*Modified and affirmed.*

EVANS, C. J., PRESTON and DE GRAFF, JJ., concur.

SUPPLEMENTAL OPINION.

WEAVER, J.—The parties, appellee and appellant, have both filed petitions for rehearing.

I. The appellant's chief complaint with the opinion heretofore filed is that there is a manifest error in computation of the amount due to the appellee. This criticism is well founded. The trial court by its decree found plaintiff entitled to recover upon the following items:

| (1) | Rents and profits | $7,522.54 |
| (2) | On promissory note | 330.85 |
| (3) | Excess interest paid | 1,225.00 |

$9,078.39

—making an aggregate of allowances to plaintiff of $9,078.39.

As against this, the trial court found defendant entitled to credits:

| (1) | Taxes paid and interest | $ 583.23 |
| (2) | Interest paid on loans | 2,932.50 |
| (3) | Shed erected on land | 298.00 |
| (4) | Cement boxes | 173.60 |

$3,987.33

—making an aggregate of $3,987.33, leaving a difference in favor of plaintiff of $5,091.06, for which judgment was rendered. By our decision, as indicated by the opinion heretofore filed, we sustained all the findings and conclusions of the trial court except (1) the item for rents and profits, which we modified by reducing the same from $7,522.54 to $2,500, and (2) the items for construction of shed and cement boxes, amounting to $471.60, charged against plaintiff, which we disallowed altogether. Upon this basis, the amount which plaintiff was entitled to recover would be the aggregate of the trial court's finding in his favor, $9,078.39, diminished by the credits allowed by the trial court (not including the items for shed and boxes), $3,515.73, and further diminished by the reduction made in the item for rents, $5,022.54. The remainder thus found is $540.12, and is the amount for which judgment should be rendered against the defendant, instead of the sum stated in the former opinion.

II. The appellee's petition for rehearing complains of the alleged failure of the court to allow him, by way of damages, certain items of interest and taxes which he claims to have paid. It is sufficient to say that all the issues involving the claims and counterclaims of that nature were tried and decided by the court below, and from that adjudication the plaintiff did not appeal; nor did this court, in disposing of the defendant's appeal, interfere with any of the findings or conclusions of the decree in that respect.

5. APPEAL AND ERROR: rehearing: scope of review.

The contention now made by the appellee is a distinct departure from the theory on which his case was originally submitted.

III.    Other points made by the parties in their petitions for rehearing are rearguments of matters fully presented by counsel and considered by the court on the original submission, and we discover nothing therein seeming to call for further discussion.   The opinion heretofore filed will be modified by reducing the amount for which judgment is to be rendered in favor of plaintiff to $540.12, with interest from the date of the decree below.

Both petitions for rehearing are overruled.