Irvin GREENBAUM, Appellant,

v.

Emory SMITH et al., Appellees.

No. 79–7.

District of Columbia Court of Appeals.

Argued Oct. 23, 1979.

Decided Dec. 10, 1979.

Kenneth B. Loewinger, Washington, D.C., for appellant.

William C. Gardner, Washington D.C., for appellees.

Before NEBEKER, MACK and FERREN, Associate Judges.

FERREN, Associate Judge:

The trial court granted summary judgment for Emory H. Smith, executor, and his surety (appellees) in an action by Irvin Greenbaum (appellant) for specific performance of a contract for the sale of real property. Smith had contracted to sell the property to Theodore M. Kahn, who in turn had contracted to sell it to Greenbaum. Before either contract had been made, however, the property had been sold (allegedly without Smith's knowledge) to another party at a tax sale. In granting summary judgment, the trial court held that appellant Greenbaum had no interest in the contract between Smith and Kahn, nor any other enforceable interest in the property. Greenbaum contends on appeal that he is the assignee of Kahn's contractual rights to the property and, as such, has a right to enforce the contract or, in the alternative, a right to damages. We disagree and thus affirm.[1]

## I.

On October 4, 1974, appellee-executor, Emory H. Smith, executed a written contract (October 4 contract) to sell decedent Rosa Lee Freeze's property (at 709 16th Street, N.E.) to Theodore M. Kahn or his designee for $4,660. The Superior Court ratified this sale on October 15, 1974. Prior to the court's ratification, however, Kahn had entered into a second written contract on October 10, 1974 (October 10 contract), to sell decedent's property to appellant, Irvin Greenbaum, for $5,350. Smith and Kahn never proceeded to settlement. On August 17, 1976, the property was transferred by tax deed to Theodore and/or Geraldine Scheve pursuant to a tax sale which had taken place on May 24, 1974, before either contract had been signed. See D.C. Code 1973, § 47–1003.[2]

On March 9, 1977, Greenbaum sued Smith and his surety, National Surety Corporation (NSC), for breach of contract and of fiduciary duty, seeking specific performance or, alternatively, damages. Smith and NSC moved for summary judgment, contending that Greenbaum did not have privity of contract with Smith through Greenbaum's October 10 contract with Kahn, and thus could not sue for performance of (or damages under) the October 4 contract. The trial court granted the motion, holding that (1) a contract may not be enforced by one who is not a party to or in privity with it; (2) Greenbaum has no enforceable interest in the October 4 contract under its terms or under the terms of the October 10 contract; and (3) Greenbaum has no other enforceable interest in the property because Kahn never "designated" him to take title (as the October 4 contract would have permitted), and, in any event, any alleged oral assignment of Kahn's property interest to Greenbaum did not comply with the Statute of Frauds.[3]

## II.

For appellant Greenbaum to prevail, he must establish that he either is the assignee

1. Appellee Smith's surety, National Surety Corporation (NSC), was also sued and filed a cross-claim against Smith. The trial court entered summary judgment for the surety (on the ground that there can be no suretyship liability when the principal is not liable) and dismissed the cross-claim as moot. We affirm summary judgment for NSC.

2. According to the supplemental record submitted by the parties after argument, Smith claimed to have no knowledge of the transfer via tax deed before October 6, 1976.

3. Appellant contends that the trial judge erred in permitting appellees to interpose the Statute of Frauds as a bar to the alleged assignment. According to the record, however, appellees did not interpose that defense; the Statute is first mentioned in the trial court's order granting summary judgment, which stated that "any oral assignment or 'designation of interest in real property' is in derogation of the Statute of Frauds and cannot convey a legally enforceable interest. Arden v. Brown, 4 D.C. 121 (Cir. Ct. D.C. 1803)." We do not reach this issue because we find no evidence that Kahn purported to assign rights under the October 4 contract, either orally or in writing. See Part II infra.

of Kahn's contractual rights to the property or has an equitable claim to it as a subpurchaser. He fails on both grounds.

■ In the October 10 contract, Kahn agreed to deliver a special warranty deed of the property to Greenbaum. This contract is not, by its terms or otherwise, an assignment.[4] Greenbaum, therefore, is a subpurchaser who is not in privity with Smith and, accordingly, has no contractual right to the property. *See Scott v. Habinck*, 192 Iowa 1213, 184 N.W. 817 (1921), *modified on other grounds, id.*, 186 N.W. 41 (1922) (where purchaser of land resold it before date of taking possession, his vendee took no assignment of the contract with the original vendor and acquired no rights against that vendor's detention against him); *Bishop v. Barndt*, 43 Cal.App. 149, 184 P. 901 (1919) (party who contracted with assignee of a contract to convey lands, without assuming obligations toward the original vendor, acquired no rights against the original vendor, since the contract with the assignee did not itself operate as an assignment). *See generally* 3 Williston on Contracts § 404 nn. 1, 2, 3 (3d ed. W. Jaegar 1960); 7 Williston, *supra*, §§ 927A, 937.[5]

■ Nor does Greenbaum have an equitable right to the property. In *Lenman v.*

*Jones*, 222 U.S. 51, 32 S.Ct. 18, 56 L.Ed. 89 (1911), *aff'g*, 33 U.S.App.D.C. 7 (1909), a third party contracted to purchase land from the original vendee, and the court sustained his right to specific performance by the original vendor, who had resisted the conveyance. The subpurchaser in *Lenman* had given notice to the original vendor two days after entering into the .contract with the original vendee, and all equities were on the side of the subpurchaser. *Lenman*, however, does not permit a subpurchaser to sue for specific performance (or damages) in a case, such as this one, in which the record does not show notice to the original vendor of the subpurchaser's claim, and the contested property has been legally acquired by a good faith purchaser.[6] *See Allison v. Mackey*, 88 U.S.App.D.C. 154, 155, 188 F.2d 983, 984 (1951).

*Affirmed.*

---

4. Appellant's opposition to the motion for summary judgment states: "Plaintiff [Greenbaum] entered into a contract with Theodore M. Kahn to buy said property from Kahn." The $500 which allegedly passed between Greenbaum and Kahn is described as a "deposit" (not as consideration for an assignment of Kahn's rights under the October 4 contract). Similarly, Greenbaum's sworn deposition indicates he never saw the October 4 contract and had no interest in it as an assignee or otherwise. Nevertheless, in an affidavit dated February 9, 1978, Theodore M. Kahn swore that he had "assigned" his rights under the October 4 contract to Greenbaum for $500. This statement, however, contradicts Greenbaum's own statements and is not confirmed by the terms of the October 10 contract or otherwise. Kahn further swore that he "would have designated" Greenbaum under the October 4 contract if settlement with Smith had occurred—a statement at odds with his assertion of a completed assignment.

5. Greenbaum cannot be considered a third party beneficiary of Smith's contract with Kahn because the contract was not made directly for

Greenbaum's benefit. *Compare Marranzano v. Riggs Nat'l Bank of Washington*, 87 U.S.App. D.C. 195, 196, 184 F.2d 349, 350 (1950) (individual employee could sue for damages suffered through her employer's violation of a collective bargaining agreement with the union because the employee fell "within [an] exception to the general rule that a stranger to a contract may not sue to enforce its terms or to receive damages for a violation thereof" (footnote omitted); the court found the contract in question had been made on behalf of all the employees and thus directly for plaintiff's benefit).

6. The property here was transferred by tax deed to the Scheves on August 17, 1976. Greenbaum did not file this action until March 9, 1977. While it is true that Smith could have redeemed the property within two years of the tax sale on May 24, 1974, *see* D.C.Code 1973, § 47, 1003, in order to fulfill his contract with Kahn, the record does not show that either Smith or the Scheves had knowledge of the October 10 (Kahn-Greenbaum) contract during that two-year period.